INTERNATIONAL RY. CO. v. WOTHERSPOON, Superintendent of Public Works, et al.

(Supreme Court, Equity Term, Erie County.   April 28, 1915.)

STREET RAILROADS ☜31—RIGHTS IN HIGHWAY—TEMPORARY DEPRIVATION BY STATE—INJUNCTION—"PROPERTY"—"HIGHWAY."

Under Laws 1913, c. 624, appropriating $80,000 to make all necessary repairs to bridges crossing Ellicott creek, which should be required by the deepening of the channel to render it part of the Erie Canal system and providing that no part of the appropriation should be available for payment for such work unless the amount was within the amount of the unexpended balance of the appropriation, after deducting necessary expenses, a street railroad company using a bridge cannot enjoin state officers from making the repair on the same without first making provision for the continuance of traffic during repairs; such creek being a "highway," and subject to the usual incidents attendant on the governmental control of highways, though the franchise over the bridge is "property" in the highest sense.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 67, 68; Dec. Dig. ☜31.

For other definitions, see Words and Phrases, First and Second Series, Highway; Property.]

Action by the International Railway Company against William W. Wotherspoon, Superintendent of Public Works, and others.   Complaint dismissed.

Cohn, Chormann & Franchot, of Niagara Falls, for plaintiff.

Egbert E. Woodbury, Atty. Gen. (Alfred L. Becker and Wilber W. Chambers, both of Albany, of counsel), for defendants.

WOODWARD, J.   The plaintiff brings this action to secure an injunction restraining the defendants from making the changes in the bridge structure at Delaware avenue in the city of Tonawanda provided for in chapter 624 of the Laws of 1913, except upon the condition that the defendants shall provide for taking care of the traffic during the progress of such work of the plaintiff's street surface railroad.   The provisions of chapter 624 of the Laws of 1913, in so far as they relate to the matter here in controversy, make an appropriation of $80,000, and the "superintendent of public works is hereby authorized to improve that portion of the Ellicott creek between the Erie Canal and the city line of the city of Tonawanda by deepening the channel of said creek to such a depth that the bottom of said channel will be on a level with the bottom of the channel of the Erie Canal, as prescribed by chapter 710 of the Laws of 1907, and to make all necessary repairs to the bridge crossing said creek which will be required by

<hr/>

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

reason of the deepening of said channel." This provision is supplemental to the development of the Erie Canal, and it requires the deepening of Ellicott creek to a minimum of 12 feet. For this purpose the "superintendent may enter upon, take and appropriate any and all lands, real estate and property necessary for the work authorized to be done by this act, upon compensation to the owners thereof for injuries thereto, in the same manner that lands are authorized by law to be acquired or damages fixed for canal purposes."

The plaintiff owns and operates a street surface railroad, constituting a connecting link in its interurban line between the city of Buffalo and Niagara Falls, over one of the bridges crossing Ellicott creek, such bridge being located on Delaware avenue, and it is the contention of the plaintiff that it is the duty of the defendants, the superintendent of public works, the state engineer and surveyor, and the contractor, to provide for taking care of the traffic of this street surface railroad during the time that the bridge is undergoing the necessary repairs. The defendants, on the other hand, contend that they have a right to remove this bridge temporarily and to reconstruct the same, without any reference to the traffic of the plaintiff's railroad. It is conceded that the work will cost considerably more if the defendants are obliged to take care of the traffic, though the defendants admit that the work may be done in such a manner as to provide for the traffic by the expenditure of a sum sufficient to place more piles for the purpose of supporting the weight of the bridge and the cars of the plaintiff. While it does not appear in the case, it is well understood in railroad work that the cost of maintaining traffic during the work of bridge construction adds from 25 to 50 per cent. to the cost of placing a modern steel bridge, and no doubt something like these figures would prevail in the case now under consideration, and the question presented seems to us to be whether the state, in authorizing this work, has provided for sustaining this additional charge.

It cannot be presumed that the state has intended to impose any undue burden upon the plaintiff, or that it has intended to needlessly interfere with the continued operation of the plaintiff's railroad, serving a public purpose justifying its public franchise. We assume, therefore, that in authorizing this work the Legislature has not intended to authorize the defendants to consult the convenience and economy of the contractor entirely, that it was contemplated that the work would be undertaken and performed with proper regard to the public convenience, and that the use of the highway would not be obstructed more than was necessary to the proper performance of the public work under construction. This would involve consideration of the convenience of the plaintiff, in its relation to the obligations of a carrier of passengers, and would involve such an adjustment as would interfere as little as reasonably possible with the operation of the plaintiff's cars; but we find in this no foundation for the contention that it is the duty of the state to pay the additional cost of this adjustment as a condition of its right to enter upon a public improvement designed for the development of the state's transportation facilities.

It is true, of course, that the plaintiff has been granted this valuable

public franchise; that the state, pursuant to its policy of development and the promotion of the comfort and convenience of the public, has granted a perpetual right to operate the plaintiff's cars over the public highways, including the bridge in question; and that this franchise is property in the highest sense, inextricably involved and merged in the tangible property of the railroad.  People v. O'Brien, 111 N. Y. 1, 47, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684.  But we apprehend that this privilege properly came to the plaintiff subject to the implied obligation to make use of it in subordination to the higher right of the state to improve its own waterways.  In other words, we assume that the state, in granting the franchises now owned and controlled by the plaintiff, did not undertake to perpetually maintain the highways and bridges over which the franchises extended in a condition adapted to the uses of the plaintiff; that it did not undertake to guarantee that the streets and bridges would never be closed for the purposes of repairs, or that the plaintiff should not be subjected to expense and inconvenience in respect to the operation of its cars.  The state undoubtedly took on the obligation of acting in good faith with the plaintiff in respect to the franchises granted.  It impliedly said to the plaintiff that it would not wantonly interfere with the operation of its cars along this and other highways, and that it would not needlessly add to its burden; but it would not have contracted that it would not, in the discharge of its higher obligations to the state, undertake public works which might involve it in additional expenditures.

A street surface railroad is given rights in the public highways, and is afforded a right of way which would in many instances cost large sums of money if purchased of private owners, and it must be deemed to have taken its rights in such highways subject to the limitations to which highways generally are made subservient, and if the state interferes with the operation of its cars only to the extent necessary, it is not to be heard to complain if the state refuses to assume the additional expense which the necessities of the railroad involve.  Because the street railroad has been given a higher privilege than that which extends to the individual using his own vehicle does not impose upon the state the duty of affording an opportunity of using this privilege different from the obligation which the state owes to each individual.  The franchise of citizenship, or of subjection to the sovereign authority gives the right to the individual to make use of the highway.  The very definition of a highway is that it shall "be common to all the king's subjects" (3 Kent's Com. 342); but no one has ever seriously suggested that the state was legally bound to afford highway privileges to all its subjects during the time necessarily employed in repairing such highways, and if it does not owe this obligation to the individual citizen, it does not owe it to the 10,000 individual subjects who are alleged to make use of the plaintiff's cars daily, and, not owing it to these individuals, it can hardly be contended that it owes this duty to the plaintiff.  Its franchise right is not taken away or destroyed, any more than the franchise of a citizen operating an automobile is destroyed by the fact that he is temporarily prevented from making use of the franchise owing to the physical interference

of the state in improving another highway, for Ellicott creek, as a part of the canal system, is a highway no less than Delaware avenue in Buffalo. 15 Am. & Eng. Ency. of Law, 350.

No property is taken from the plaintiff. It has the right to operate its cars over this bridge, subject to the right of the state to interrupt the physical exercise of the franchise in the performance of a public work, and, having made no provision for expending more than is necessary to accomplish the public work, the defendants are not bound to provide means of taking care of the traffic. That duty rests with the plaintiff, with the obligation on the part of the defendants to make this interruption as little burdensome as practicable, consistent with the economical performance of the work. The language of the appropriation is that "the sum of eighty thousand dollars, or so much thereof as may be necessary, is hereby appropriated for the purpose specified in this act," and the only purposes specified in the act are the improvement of Ellicott creek to a given depth and "to make all necessary repairs to the bridges crossing said creek which shall be required by reason of the deepening of said channel." To make the exclusion more complete, the statute provides that:

"No part of the appropriation hereby made shall be available for payments upon a contract or contracts for such work unless the amount of such contracts be within the amount of the unexpended balance of the appropriation after deducting the expense of necessary advertising, plans and specifications and a sum to be stated in an estimate of expenses, if any, incidental to the employment of forces of the department of public works, to be filed by the superintendent of public works with the comptroller."

Obviously the Legislature has intended to provide only for the work specified, and has limited the incidental expenses to be provided for, at the same time withholding the appropriation entirely unless the contracts are within the limitations fixed by the appropriation after taking care of these incidental expenses. Unless, therefore, the state is constitutionally bound to provide for taking care of the traffic as a condition of performing the public work contemplated by the statute, and we think it is not, there is no basis for granting the relief demanded by the plaintiff; certainly not in the absence of some indication that the appropriation contemplated such payment, and that the amount appropriated was sufficient to pay all of the expenses provided for, including such traffic carrying expenses. We think a fair reading of the statute forbids such a construction, and that the most the plaintiff is entitled to is to have the defendants maintain the traffic at the expense of the plaintiff during the progress of the work.

The complaint should be dismissed, with costs.